# NO. 12-17-00074-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS,* *APPELLANT/CROSS-APPELLEE,* *APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *EDWARD MALONE,* *APPELLEE/CROSS-APPELLANT,* *APPELLEE* | § | *SAN AUGUSTINE COUNTY, TEXAS* |

## *OPINION*

The State of Texas appeals the trial court's grant of Edward Malone's motion to quash his indictment for falsely holding himself out as a lawyer. Malone cross appeals the trial court's denial of his pretrial application for writ of habeas corpus. In four issues, Malone challenges the constitutionality of the statute under which he was indicted. We affirm in part, reverse in part, and remand for further proceedings.

### BACKGROUND

Appellant was charged by indictment with falsely holding himself out as a lawyer. He filed a motion to quash the indictment and a pretrial application for writ of habeas corpus. After a hearing, the trial court denied the application for writ of habeas corpus but granted the motion to quash the indictment. This appeal followed.

### MOTION TO QUASH INDICTMENT

In its sole issue, the State argues that the trial court erred by granting Malone's motion to quash the indictment because "[t]he prosecutor in this case did not request a dismissal and no other facts giving the trial court authority to dismiss the criminal case were presented." Malone

responds that the trial court did not err because the indictment (1) does not provide adequate notice of the charges, (2) alleges a factual impossibility, and (3) is tainted by false information provided to the grand jury.[1]

**Notice**

A person commits the offense of falsely holding himself out as a lawyer if he,

> with intent to obtain an economic benefit for himself, holds himself out as a lawyer, unless he is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bars or licensing authorities of any and all other states and foreign countries where he is licensed.

TEX. PENAL CODE ANN. § 38.122(a) (West 2016).[2] The indictment in this case alleges that Appellant

> did then and there with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to-wit: by stating in the local paper that he was a defense attorney in San Augustine, Texas, and the defendant was not then and there in good standing with the State Bar of Texas and the state bar of Virginia, where the defendant was licensed to practice law[.]

In his motion to quash, Malone contended that the indictment fails to clearly allege (1) a holding out, (2) an economic benefit, (3) the state in which he was not in good standing, and (4) the state in which he was required to be in good standing. A charging instrument must convey sufficient notice to allow the accused to prepare a defense. *State v. Barbernell*, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008). In an indictment, the offense must be set forth in plain and intelligible words. TEX. CODE CRIM. PROC. ANN. art. 21.02 (West 2009). The indictment must include everything that is necessary to be proved. *Id.* art. 21.03 (West 2009). The certainty required in an indictment is such as will enable the accused to plead any resulting judgment in bar of another prosecution for the same offense. *Id.* art. 21.04 (West 2009). An indictment is sufficient if it

> charges the commission of the offense in ordinary and concise language in such a manner as to

---

[1] Malone also contended in his motion to quash that the false lawyer statute is unclear regarding the jurisdiction in which a person is required to be in good standing. We reject this argument in a following section of this opinion and therefore conclude that the trial court could not have properly granted the motion to quash on this basis.

[2] In this opinion, we refer to penal code section 38.122(a) as the "false lawyer statute." *See Celis v. State*, 416 S.W.3d 419, 421 (Tex. Crim. App. 2013).

enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment[.]

*Id.* art. 21.11 (West 2009).

In most cases, an indictment that tracks the statutory text of an offense is sufficient to provide a defendant with adequate notice. *Barbernell*, 257 S.W.3d at 251. However, the information may be insufficient when the statutory language fails to be completely descriptive. *Id.* The statutory language is not completely descriptive when it defines a term in such a way as to create several means of committing an offense, and the definition specifically concerns an act or omission by the defendant. *Id.* If the prohibited conduct is statutorily defined to include more than one manner or means of commission, the state must, upon timely request, allege the particular manner or means it seeks to establish. *Id.* We review a trial court's decision to quash an indictment for failure to provide adequate notice de novo. *See id.* at 251–52.

Malone argued that the indictment should be quashed because it fails to allege that he held himself out as a lawyer. Initially, we note that the indictment tracks the statutory text of the offense, which is generally sufficient to provide a defendant with adequate notice. *See id.* at 251. Additionally, the indictment specifies the act of holding out as "stating in the local paper that he was a defense attorney in San Augustine, Texas."

In analyzing whether an indictment provides adequate notice, we perform a two-step analysis. *Id.* at 255. First, we identify the elements of the offense, which include (1) the forbidden conduct, (2) the required culpability, if any, (3) any required result, and (4) the negation of any exception to the offense. *Id.* Second, when the Legislature defines an element of the offense that describes an act or omission, we must determine whether the definition provides alternative manners or means in which the act or omission can occur. *Id.* If it does, the indictment supplies adequate notice only if it alleges, in addition to the elements of the offense, the specific manner and means of commission the state intends to prove at trial. *Id.*

Here, the elements of falsely holding oneself out as a lawyer are (1) a person (2) holds himself out as a lawyer (3) with intent to obtain an economic benefit for himself (4) at a time when he is not licensed to practice law in this state, another state, or a foreign country and in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where he is licensed. The forbidden conduct—or the act—is

3

holding oneself out as a lawyer. The Legislature has not defined "holding out." Therefore, we conclude that the notice was adequate even without specification of the act of holding out. *See id.*

However, Malone contends that the act specified in the indictment does not constitute "holding out." He notes that to prove a couple held themselves out as married in a common law marriage case, proof that they consistently conducted themselves as a married couple is required. *See, e.g.*, *Ex parte Threet*, 160 Tex. 482, 486, 333 S.W.2d 361, 364 (1960). Malone urges us to read into the false lawyer statute a similar requirement of a pattern of holding out. We decline to do so. When a statute is clear and unambiguous, the Legislature must be understood to mean what it expressed, and it is not for the courts to add to or subtract from the statute. *Lomax v. State*, 233 S.W.3d 302, 308 (Tex. Crim. App. 2007). Here, the statute is clear and unambiguous. The Legislature did not require proof of a pattern, and we will not create such a requirement. We conclude that by alleging that Malone held himself out as a lawyer "by stating in the local paper that he was a defense attorney in San Augustine, Texas," the indictment sufficiently alleges a holding out.

Malone further argued that the indictment should be quashed because it does not explain what economic benefit he intended to obtain for himself. We disagree. "Economic benefit" is not an act or forbidden conduct. Therefore, the particular economic benefit Malone intended to obtain for himself was not required to be specifically alleged in the indictment. *See State v. Jarreau*, 512 S.W.3d 352, 355 (Tex. Crim. App. 2017) (indictment for delivery of a dangerous drug was not required to specify particular definition of dangerous drug because definitions did not concern the act, which was "deliver or offer to deliver").

Additionally, Malone argued that the indictment should be quashed because it does not clearly allege which state bar he was not in good standing with. We agree that the indictment does not clearly allege which state bar (or bars) Malone was not in good standing with. Nevertheless, this omission does not result in a lack of adequate notice. Not being in good standing with a state bar is not an act or forbidden conduct. Therefore, the particular state bar (or bars) with which Malone was not in good standing is not required to be specifically alleged in the indictment. *See id.*

Finally, Malone argued that the indictment should be quashed because it does not clearly allege which state bar he was required to be in good standing with. We observe the plain

4

meaning of the statutory text to be that a person may violate the statute unless he is in good standing with the State Bar of Texas and the state bars of all other states where he is licensed. The indictment tracks the statutory text and asserts that Malone violated the statute because he was not in good standing with both the State Bar of Texas and the state bar of another state where he was licensed, namely Virginia. We conclude that Malone's argument here is without merit. Accordingly, we conclude that the trial court could not have properly granted the motion to quash on the basis of inadequate notice.

**Factual Impossibility**

Malone further argued that the trial court should grant his motion to quash because the indictment alleged a factual impossibility, namely, that he was "not then and there in good standing with the State Bar of Texas and the state bar of Virginia, where [he] was licensed to practice law." Malone interprets this text to allege that he was licensed to practice law in Texas, which he contends is false because his Texas law license was canceled. Consequently, he argues that he could not have been in "bad standing" in Texas because he had no Texas law license. He further asserts that he was licensed and in good standing with the State Bar of Virginia on the date of the alleged offense.

Initially, we observe that the statute requires a person to be in good standing with the State Bar of Texas, rather than to not be in "bad standing." *See* TEX. PENAL CODE ANN. § 38.122(a). Furthermore, Malone's arguments here require us to make assumptions about the facts surrounding the commission of the alleged offense, which we cannot do. *See Patterson v. State*, 353 S.W.3d 203, 208 (Tex. App.—San Antonio 2011, pet. ref'd). Fact based arguments cannot show that a trial court properly granted a motion to quash an indictment. *See Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). A motion to quash cannot be used to argue that the state could not prove an element of the offense. *See id.* Consequently, we conclude that the trial court could not have properly granted the motion to quash based on the purported factual impossibility.

**False Information to the Grand Jury**

Finally, Malone argued that the trial court should grant his motion to quash the indictment because the State misled the grand jury to believe that he was not a lawyer in good standing in any state. When a legally constituted grand jury returns an indictment which is valid on its face, it is sufficient to call for a trial on the merits. *Dean v. State*, 749 S.W.2d 80, 82 (Tex.

5

Crim. App. 1988). A reviewing court will not go behind the actions of a grand jury to determine whether an indictment was properly returned. *DeBlanc v. State*, 799 S.W.2d 701, 706 (Tex. Crim. App. 1990). We conclude that the trial court could not have properly granted the motion to quash based on the alleged misleading of the grand jury. For this reason, as well as those discussed above, we sustain the State's sole issue.

## APPLICATION FOR WRIT OF HABEAS CORPUS

In his cross appeal, Malone challenges the trial court's denial of his pretrial application for writ of habeas corpus on grounds that the false lawyer statute (1) is unconstitutionally vague and overbroad, (2) violates the Commerce Clause, Privileges and Immunities Clause, and Equal Protection Clause, and (3) is preempted by federal law. The State responds that (1) we lack jurisdiction to hear Malone's appeal from the trial court's order denying relief, (2) Malone's challenges are not cognizable on pretrial habeas, and (3) the false lawyer statute is not preempted by federal law because it regulates only the holding out of oneself as a Texas lawyer.

### Jurisdiction

In Malone's first issue, he preemptively argues that "habeas corpus relief in this case is ripe for adjudication." In response, the State argues that we lack jurisdiction to hear Malone's cross appeal because the trial court did not enter an appealable order as required by Texas Rule of Appellate Procedure 38.1(k)(1)(A). That rule requires an appellant's brief to contain a copy of the appealable order from which relief is sought. TEX. R. APP. P. 38.1(k)(1)(A). The State observes that Malone's brief does not contain a copy of an order denying his application for writ of habeas corpus, and none appears in the clerk's record. However, Rule 38.1(k) is titled "Appendix in civil cases." Thus, that rule is inapplicable to this criminal case. The State acknowledges that the trial court orally denied Malone's application. We conclude that the lack of a written order does not deprive us of jurisdiction to hear Malone's appeal.

The State further argues that no appeal lies because the trial court did not issue a writ of habeas corpus or rule on the merits of the case. A writ of habeas corpus is an order from a judge commanding a party, who is alleged to be restraining the applicant in some way, to appear before the court with the object of alleged restraint and explain the reasons for the restraint. *Ex parte Hargett*, 819 S.W.2d 866, 868 (Tex. Crim. App. 1991). No appeal can be had from a refusal to issue a writ of habeas corpus. *Id.* But regardless of whether such a writ was issued, when a

hearing is held on the merits of the applicant's claim and the court subsequently rules on the claim's merits, the losing party may appeal. *Id.* at 868-69. Here, we find no writ issued by the judge in the record. However, the record contains a transcript of a hearing during which Malone and the State argued the merits of Malone's claims, and the trial court denied the application. Accordingly, we conclude that we have jurisdiction to hear Malone's appeal.

## Cognizability

The State also challenges the cognizability of Malone's second and third issues on pretrial habeas. Pretrial habeas may be used to assert a facial constitutional challenge to the validity of a statute. *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016). However, an as-applied constitutional challenge to the statute is not cognizable before trial unless the rights underlying the claim would be effectively undermined if not vindicated pretrial, such as the rights involved in double jeopardy and bail claims. *Id.* Moreover, pretrial habeas is generally not available to construe the meaning and application of the statute defining the offense charged. *Id.* Nor is pretrial habeas available when the resolution of a claim may be aided by the development of a record at trial. *Id.* A challenge to a statute under the First Amendment's overbreadth doctrine is a facial challenge that can be brought in a pretrial habeas application, and the denial of relief may be immediately appealed. *Id.* at 902. As discussed in the following sections, we conclude that certain challenges raised by Malone are cognizable on pretrial habeas while others are not.

## Standard of Review and Applicable Law

To prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). We review de novo a facial attack on a penal statute because it is entirely a legal question. *Brown v. State*, 468 S.W.3d 158, 171 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). The party challenging the statute has the burden to establish its unconstitutionality. *Id.*

## Free Speech

In part of Malone's second issue, he raises a free speech challenge to the false lawyer statute. He argues that the statute prohibits protected free speech by prohibiting "simply calling [oneself] a lawyer." However, the statute does not prohibit simply calling oneself a lawyer. It prohibits holding oneself out as a lawyer with intent to obtain an economic benefit while not

being licensed to practice law and in good standing.  TEX. PENAL CODE ANN. § 38.122(a).  Purely gratuitous comments do not fall within the statute because intent to gain economic benefit is an element of the offense.  *Ex parte Manrique*, 40 S.W.3d 552, 554 (Tex. App.—San Antonio 2001, no pet.).

Nonetheless, Malone argues that because the statute does not narrowly define "economic benefit," a prosecutor may "prosecute hortatory speech, claim that the speech was done 'in order to obtain an economic benefit,' and hope that a jury with a wild imagination will dream up any conceivable economic purpose it can think of."  We construe this argument as a challenge under the First Amendment's overbreadth doctrine and accordingly address the issue.  *See Ex parte Perry*, 483 S.W.3d at 902.

Although the false lawyer statute does not define "economic benefit," penal code section 38.01 defines it as "anything reasonably regarded as an economic gain or advantage, including accepting or offering to accept employment for a fee, accepting or offering to accept a fee, entering into a fee contract, or accepting or agreeing to accept money or anything of value."  TEX. PENAL CODE ANN. § 38.01 (West 2016).  Based on this definition, we conclude that the statute regulates only commercial speech.  *See Celis v. State*, 354 S.W.3d 7, 32 (Tex. App.—Corpus Christi 2011), *aff'd* 416 S.W. 3d 419; *Brown*, 468 S.W.3d at 173; *Ex parte Manrique*, 40 S.W.3d at 554.

The justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context.  *Celis*, 354 S.W.3d at 32.  When the regulation of a commercial enterprise, such as the practice of law, is the subject of legitimate and substantial government interest, the fact that regulation has an incidental impact on speech is not sufficient to render the statute invalid.  *Id.*  The State of Texas has a compelling interest in regulating the commercial speech of individuals who hold themselves out as lawyers in Texas, and such regulations are for the benefit and protection of the people as a whole.  *Id.* at 33.  We conclude Malone fails to establish that the false lawyer statute is facially overbroad.  *See Celis*, 354 S.W.3d at 33; *Brown*, 468 S.W.3d at 173; *Ex parte Manrique*, 40 S.W.3d at 554.  Accordingly, we overrule the part of Malone's second issue concerning free speech.

**Vagueness**

In another part of Malone's second issue, he argues that the false lawyer statute is vague on its face and as applied to him.  Malone's as-applied constitutional challenge to the statute is

not cognizable before trial. *See Ex parte Perry*, 483 S.W.3d at 895. Therefore, we address only his facial vagueness challenge.

Malone argues that the statute is unconstitutionally vague because it is unclear regarding where a person must be licensed and in good standing. A penal statute is void for vagueness if it fails to define the offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited, and (2) in a manner that does not permit arbitrary and discriminatory enforcement. *Lawrence*, 240 S.W.3d at 915.

We see no reason why ordinary people could not understand what conduct is prohibited by the false lawyer statute. *See id.* Regarding which jurisdiction a person must be licensed in, the plain meaning of the statutory text is that a person may violate the statute unless he is licensed in Texas, another state, or a foreign country. Regarding which jurisdiction a person must be in good standing with, as we previously observed, the plain meaning of the statutory text is that a person may violate the statute unless he is in good standing with the State Bar of Texas and the state bars of all other states where he is licensed. We conclude that Malone fails to establish that the false lawyer statute is facially void for vagueness. *See id.* Accordingly, we overrule the part of Malone's second issue concerning vagueness.

## Commerce Clause, Privileges and Immunities Clause, and Equal Protection Clause

In Malone's third issue, he contends that the false lawyer statute violates the Commerce Clause, Privileges and Immunities Clause, and Equal Protection Clause because it discriminates between Texas residents and nonresidents. Because it is Malone's burden to establish that the statute is unconstitutional, and his arguments pertain only to the Privileges and Immunities Clause, we address the statute's facial constitutionality under that clause only. *See Brown*, 468 S.W.3d at 171.

The U.S. Constitution guarantees that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2, cl. 1. By its express terms, the false lawyer statute makes the same requirements of all individuals regardless of their status as Texas residents or nonresidents. Therefore, the statute does not expressly discriminate against nonresidents.

Nevertheless, Malone argues that although the statute does not expressly discriminate against nonresidents, it has such a discriminatory effect in practice. *See Chalker v. Birmingham & N. W. Ry. Co.*, 249 U.S. 522, 526–27, 39 S. Ct. 366, 367, 63 L. Ed. 748 (1919) (statute

9

levying higher tax on companies with out-of-state chief offices, while not expressly discriminating against nonresidents, violated Privileges and Immunities Clause in practice). Malone contends that "the statute has the practical affect [sic] of giving a competitive marketing and branding advantage to Texas lawyers by forcing lawyers from other states to renounce the title of 'lawyer' once they step on Texas soil." We disagree.

First, nonresidents of Texas are free to pursue good standing status with the State Bar of Texas in addition to any other state bar where they are licensed. *Cf. id.*, 249 U.S. at 527, 39 S. Ct. at 367. ("Under the federal Constitution a citizen of one state is guaranteed the right to enjoy in all other states equality of commercial privileges with their citizens; but he cannot have his chief office in every one of them."). Thus, unlike the statute in *Chalker*, which denied commercial privileges to nonresidents whose chief offices were out of state, the statute here does not deny any privilege to nonresident lawyers. Moreover, whereas the state in *Chalker* had "no adequate basis for taxing individuals according to the location of their chief offices," the state here has a compelling interest in regulating the commercial speech of individuals who hold themselves out as lawyers in Texas. *See id.*; *see also Celis*, 354 S.W.3d at 32. Therefore, we conclude Malone fails to establish that the statute offends the Privileges and Immunities Clause. Accordingly, we overrule Malone's third issue.

**Preemption**

In Malone's fourth issue, he argues that the statute "is preempted by federal law which allows out-of-state attorneys to be admitted into certain courts in Texas, practice law, and hold themselves out as attorneys for economic benefit." Specifically, he contends the statute is preempted by Article III, Section 1 of the U.S. Constitution,[3] pursuant to which Congress established "four federal district courts in Texas that all allow out-of-state lawyers to become members of the bar of these federal courts, practice law, and presumably call themselves 'lawyers.'"

Essentially, Malone contends that because the federal courts in Texas do not require attorneys applying for admittance to be in good standing with the State Bar of Texas, the state is precluded under the Supremacy Clause from requiring attorneys practicing only in federal court to be in good standing with the State Bar of Texas before they may hold themselves out as

---

[3] "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1.

10

lawyers. This is not an argument that the false lawyer statute "always operates unconstitutionally in all possible circumstances." *See Rosseau*, 396 S.W.3d at 557. This is an argument that the statute operates unconstitutionally as applied to attorneys who are practicing in federal courts in Texas and are not in good standing with the State Bar of Texas. Thus, Malone's preemption challenge is not cognizable on pretrial habeas. *See Ex parte Perry*, 483 S.W.3d at 895. Accordingly, we overrule Malone's fourth issue.

## DISPOSITION

Having sustained the State's sole issue and overruled Malone's second, third, and fourth issues, we *reverse* the trial court's order granting the motion to quash the indictment, *affirm* the trial court's order denying the application for writ of habeas corpus, and *remand* this cause for further proceedings consistent with this opinion.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 31, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2018**

**NO. 12-17-00074-CR**

**THE STATE OF TEXAS, APPELLANT/CROSS-APPELLEE,**
Appellant
V.
**EDWARD MALONE, APPELLEE/CROSS-APPELLANT,**
Appellee

Appeal from the 273rd District Court
of San Augustine County, Texas (Tr.Ct.No. CR-16-8707)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this Court that there was error in the judgment of the court below insofar as it granted the motion to quash the indictment, in all other respects the judgment of the trial court is affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below wherein the trial court granted the motion to quash the indictment is **reversed**, and the cause is **remanded** for further proceedings consistent with the opinion of this Court. It is further ORDERED that in all other respects the judgment of the trial court is **affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*